Case number 22-3935, Dayton Veterans Residences Ltd v. Dayton Metro Housing Authority. Oral argument, 15 minutes per side. Mr. Green for the appellant. May it please the court. I'm James Green. I represent Dayton Veterans Residences that does business as Freedom's Path. My client is a developer and in this case was a developer, a proposed developer of housing, supportive housing for homeless vets. You'd like six minutes for rebuttal? Yes, your honor. Please try to cover all the issues just so we don't get a situation where you haven't covered them. This is the second trip to this court. The initial panel addressed many of the issues that are the subject of this appeal. One of which is the failure to give a jury instruction on what VASH is. VASH is Veterans Assisted Supportive Housing. It provides money to provide supportive services so that homeless prioritizing disabled vets can get supportive services so they can get off the street and actually live in a dwelling and enjoy a dwelling. Mr. Green, we've read the prior opinion and you've chosen to set aside six minutes, which is your choice. Never heard that before. So we've got less than eight minutes and you have nine issues, which again we hardly ever, ever see. So help us out here. Tell us what your top two arguments out of those nine are because we're not going to get to the other seven. Okay, I have nine minutes for the initial then six for rebuttal. Including over nine and eight isn't going to help. You're absolutely correct, your honor. Thank you. Let's see, the defense here was four-fold and connected. Number one is that the defendant did not know that plaintiff was requesting an accommodation for people with disabilities. It's undisputed that my client said he was seeking VASH vouchers, which based upon the requested jury instruction clearly prioritizes homeless veterans with disabilities. Second, that VASH is not restricted to vets with disabilities. Craig Taylor, our key witness in the case, indicated that while the VASH program is not limited to homeless vets with disabilities, 100% of his projects house people with disabilities. Does this all go through? Go ahead. You've already lost me. I can't figure out what of your nine issues you're even talking about. Are you saying that because an expert said something, that means that the judge has to give a jury instruction in accordance with what a witness said? No. Actually, let me clarify. Mr. Taylor was not an expert. I didn't misspeak when I said expert. That said, the defense in this case said that they didn't know that my client's prospective tenants were persons with disabilities. They said that at no point did my client use the word disability in its interactions or e-mails. You presented counter evidence. Pardon? You presented counter evidence. Yes, we did. This is about the instruction to the jury that you wanted? However, the VASH definition went to the heart of the obviousness issue. If you're prioritizing... You presented evidence on what VASH is and the purpose and the reasoning behind it and who it helps. Right. You wanted instruction about its specific purpose. Yes. Which is a little unusual, right? Do we give instructions about legislative purpose? Well, whereas here you're dealing with an obviousness issue, and that was a core defense in this case, we believe that the VASH instruction would have been essential. There are a number of other cases that talk about discrimination by proxy, having white hair. Did you move for a directed verdict? No. If it's a legal question, you can move for a directed verdict. We did not move for a directed... It's just a fact. Right. It's facts on the record. The jury assesses those. The statement you wanted read, this came from the website? Yes, but it is the law and it was... Is it a statute? It's a reg. Okay. However, this court... How do you even know it was a reg? It was in effect at the time all this happened. Well, the first panel in this matter did cite that and discuss it at length. When did the reg come into existence? It's been in existence, I believe, since 2014 or 2015. So really, coming to the chase here, at least on this issue, you're saying we should reverse this and set it back again because the judge didn't read from a regulation that you had witnesses fully elucidate before the jury. I don't get it. Well, we believe that given the repeated testimony, the questioning of my client over objection, please name one prospective tenant with disabilities, we believe that it would have been required in this case. And we realize that not every jury instruction that you request is required, but it went to the core of the defense in this case and the core of the plaintiff's presentation. Do you have a single case that you can point us to that would send a case back that had been tried by a jury for failure to cite a regulation in jury instructions that otherwise were presented to the jury both by witnesses and in, I assume, closing arguments? Well, with the defense basically arguing that we didn't know what VASH was, we'd never heard of what VASH was. My question is simple. Do you have a case that's even close to this question of promising an instruction on regulations? No. Let's get to hopefully an easier issue, which is the benefits of both disabled and non-disabled individuals equally. This issue was discussed at length in the first panel's reversal of Judge Rose, who sua sponte granted summary judgment saying that benefits both disabled and non-disabled equally is not necessary. We had requested that the district court reject the defendant's proposed instruction, and in fact the district judge instructed, quote, an accommodation that benefits both disabled and non-disabled individually equally is not an accommodation of a disability. There are countless examples of... That's not necessary. Excuse me, it's not necessary. There are countless examples of accommodations. For instance, an elevator. An elevator for a person with a mobility disability is certainly necessary for that person, and putting in an elevator in a building will benefit both people with disabilities and non-disabled. But it's not going to benefit them equally, is it? It's one thing to not be able to get to the other floor at all, as opposed to those of us who don't have ambulatory issues finding it convenient to have an elevator, correct? Yes, but under this judge's instruction, Judge Rose's instruction, an elevator would have been deemed not necessary for a person with a disability because it affected the disabled equally with the non-disabled. But it doesn't affect them equally. You're promising a conclusion in the form of a question. The court, the first panel, said that without the accommodation, in this case the VASH vouchers, the disabled vets would not succeed just as non-disabled people would not succeed. The proposed accommodation that we were requesting was to amend the administrative plan to be able to award the vouchers based on awards through other government agencies. This is a direct quote from the first panel. We believe that that instruction basically kneecapped us. We said that we needed VASH vouchers to get supportive services, to get homeless disabled vets off the streets and into housing that they could enjoy. I realize my initial... I'll give you another chance. Do you want to make another argument and use some of your rebuttal time now, or do you want to save the full six? In other words, if you don't make the argument now, in some ways it's not really fair for us to rebuttal. The other ruling was kind of a series of rulings in connection with an advice of counsel defense. We contend it was a de facto defense. There are relatively few cases out there that address de facto. In this case, two years after the witness disclosure period had expired and 18 months after discovery closed, Mr. Christopher Green, who was the general counsel of this agency and had been counsel of record, withdrew and a couple days later was disclosed as a witness for the first time. I think if the case had been tried 10 days later like it was supposed to be, it seems to me you'd have a pretty good argument. But the case wasn't tried for two and a half more years. Why didn't you just seek an extension of the discovery period and take the guy's deposition when it seems to me it would have been totally obvious that he was going to testify and what he was going to say? Well, number one, we didn't want to go into discovery. There had been some other discovery that had not been taken in the case. I didn't want to reopen the discovery period, but frankly, this sanction under Rule 37 we believe was automatic. There was not one single explanation of a justification, an honest mistake on the part of the defense for essentially trying to sandbag us well after the discovery period had expired. I realize there was a two and a half year gap between the scheduled first trial and the actual second trial. What was the prejudice? Pardon? How were you prejudiced? Well, first of all, having a lawyer testify as to how he processed reasonable accommodation actions and what was reasonable and what was not reasonable and testifying that you can't ask follow-up questions as to what the nature of the disability is, which is clearly contrary to the Department of Justice statement on reasonable accommodation. We believe that there's always an inherent problem with a lawyer testifying. That goes less to timing and more to the point of who the witness is. So this is moving away from the timing. Yeah, this is relating to the substance. I thought the focus was the timing. Pardon? I thought the focus was the timing. Well, the focus was on the timing, but it was all interconnected because this witness, even though the judge said he couldn't testify as an expert, he was offering essentially expert opinions or he was offering what lawyers, having a lawyer testify as a witness is a very, from at least a trial lawyer standpoint, a very difficult matter because That's a different analysis. Sandbagging I get, although it's the timing. But this is just a substantive of the witness. But this would be You objected to him being able to testify as an expert. The judge sustained that. And then every time there was a question that seemed to be leading to his expert opinion, you objected and the judge wouldn't let the question be asked. So where's the problem there? Well, he did go on to testify that when a disability is not obvious, he can't ask any follow-up questions, which is clearly contrary to not only the DOJ statement from 04 on reasonable accommodation, but also some of the case law that we cited in our papers. And seriously, how could the whole trial turn on that exchange? It doesn't, but it's just another example. We've argued cumulative error here. And we believe that even if the disabled and not disabled equally is not necessary as a matter of law, that was argued a couple of times throughout the trial and in closing argument by defense counsel. These issues individually and collectively, cumulatively, we believe warrant a new trial. Thank you. Judge McKeague, any more questions? No, thank you. Okay, how about we say three minutes for rebuttal? I think there was an extra five, so you come out with plus two. Does that work? Okay. I don't want you to object, but hopefully that works out fine. Thank you, Your Honors. May it please the court, Ray Fredegar for the Appalachian Dayton Metropolitan Housing Authority, that I refer to as DMHA. And they were Dayton veteran residences. I'll refer to them as DVR. They had their day in court. This case has been around a long time. And Judge Rice, in his opinion, said that he sees a narrow window of time where there are questions of fact that the jury has to answer. And that is whether the December 2015 time frame into early January 2016, did you ask for an accommodation? Was this on behalf of disabled persons? Was your request reasonable? Was it necessary? Five and a half days of trial. Actually, they had three witnesses. One was from OFA. We had Ms. Heapy and Mr. Green, who, by the way, was not an expert witness. The judge said you cannot give expert opinion. They objected at the appropriate time. If there were any kind of questions that would cross that threshold into expert testimony, Judge Rose properly sustained that objection. Also, too, they've told you that we said we didn't know what VASH was. That's entirely false. In opening statement at trial, counsel told the jury that you had to be disabled to get VASH. That was a misstatement of law. So Judge Rose didn't give the instruction. As a matter of fact, Mr. Taylor admitted on this stand, you don't have to be disabled to get VASH. Can I go back to the first issue you raised? So why did you wait so long to disclose Green? Well, it's not the usual practice. Right, right. I think it's just a matter of so much time had lapsed between cases and when you finally know, you know, generally we thought summary judgment was going to resolve all issues. And so when we finally got a new case order, and we disclosed right away when we got that new case order, and we told him, told counsel, that if you need to take his deposition, that's fine with us. You can, but we intend to call him as a witness at trial. And not that it's a surprise, because he was on the communications. Were there witness disclosure dates that had expired? No, no, no. He was disclosed. No, I know he was. Well, when was the witness disclosure? Well, I appreciate your optimism in summary judgment. Under this. I thought we were doing summary judgments. We didn't do a whole bunch of things. No, it turns out we lost. So now here's a bunch of things we're going to do. That's not how it works. Under the revised scheduling order, he was disclosed within those deadlines. He was. So in other words, when the scheduling order was issued, and they set new dates including the trial date, he was disclosed within the deadline. Judge Rice issued a scheduling order? I believe so early on when the case was supposed to be tried in January 2020. So are you talking about the trial deadlines? I am talking about the discovery deadlines. The discovery deadlines. When this case went in the case that was tried before Judge Rose and after he was recused when Rice recused himself, he had been disclosed before that. He had been disclosed two and a half years before trial began. Well, that's because trial was delayed for two years. True. So he was disclosed two weeks before the trial was supposed to start. And Judge McKee, I agree. I agree. That's unusual. He wasn't disclosed in the Rule 26 disclosures. We can agree on that. I think it was a mistake on our part to not include him. We thought it was obvious because he was included on the emails. But we do not think that we're prejudiced by any of this. Just so we're clear, because I think I misunderstood something that you had said earlier. I thought that you said that these deadlines were revised and that you disclosed him within the revised deadline. That's right. This revised deadline was contained in what, a scheduling order? Yes. Okay. Yes. And that scheduling order was a discovery scheduling order? Yes. It sets forth deadline for your disclosure of witnesses, then discovery cutoff, and then motion for summary judgment, final pretrial, and all that. And then resulting in a June 22, 2020. Is that in your briefing? Pardon? Is that in your briefing, this revised order? I don't think we mention it. But is this a revised order that comes after Judge Rose kicks the trial and says they're in? Well, it came in January 2020. And to be honest, I don't remember when that revised scheduling order came about. I just don't know. Because their point in their brief was basically we were prejudiced because he testified as an expert witness. That was their argument in their brief. And we said, number one, he didn't testify as an expert witness, and Judge Rose would not allow him to testify as an expert witness. Now, they also raised the cumulative error doctrine. Well, this court has held you cannot raise that for the first time in your reply brief. And that's exactly what they've done. Was he a counsel of record in this case? Was he one of the counsel listed on the pleadings in this case? Well, initially, I believe he was. I mean, you don't expect that person to show up as a witness, I've got to say. No. It feels like you're not being totally straight. That was very early on. That was very early on. I think what Mr. Green did was file the dispositive motion to dismiss early on. Because he thought there was no standing. DVR had no standing. And then when that didn't happen, then I think I got involved. But this was many years ago. The judge's instructions were fair to the jury. After five and a half days, the jury had no questions.  They didn't ask, well, what's this phrase mean? And in 45 minutes, they were finished with an eight to nothing verdict. It was very evident if reading the trial record. This was about credibility. They didn't believe what they were saying. For example, for example, Mr. Taylor said, it's in my vernacular, it's my habit to refer to them as disabled vets. That's what he says. He says, I must have told them that because that's what I referred to them as. The jury had every single written communication. Every single one. Not one from them referred to disabled. The word disabled in a trial, I counted the number of times Mr. Green said disabled. And I said, during that entire time from December 2015 to September 2016, you know how many times they used the word disabled? Zero. Zero. It's in his vernacular and he didn't mention it. And then Mr. Paxson took the stand. In between that, well, Sean Thomas of OFA, he spoke to them. And I said, how does Mr. Taylor refer to this class of people? Veterans. I said, do you ever mention disabled? No. Paxson said the same thing. Taylor never referred to disabled persons when he was talking about this project because it wasn't about disabled persons. This wasn't about disabled persons at all until Mr. Green, Attorney Green himself, authored the September 2, 2016 letter. And Judge Rice has already said, well, that's definitely not reasonable. You gave them a week, basically, to do everything you wanted. But the key fact in this case, I get, well, a lot of key facts, I guess, when you're trying a case for five and a half days, right? When they first asked us for anything, it was a letter of intent. That's it. A letter of intent that you're going to do this. Well, when's it due? In four days. They asked us for a letter of intent on December 14. It was due December 18. Jennifer Hebe says, I can't give you a letter saying that I'm going to do something. That's against our administrative plan. I cannot do that. Now, he claimed, at trial, he was able to argue, well, I asked him to amend the plan. Jennifer Hebe says, no, he did not ask me to amend the plan. He told me... Does this all go to the BASH instruction that your friend on the other side wanted, or is this a different point here? Well, this is a different, as far as letting us know what he was asking for was on behalf of disabled. So they're kind of connected. BASH just means... We had nine arguments from the other side. Yeah, I understand. I'm not saying pejoratively. I'm saying we had nine. I'm trying to figure out which argument you're referring to. Which argument I'm relating? Well, it's kind of a combination. It's all about, was it open? It feels like you're talking about your trial theme. There was the BASH argument, and there was the argument about the names. Is this a point about the names, where you wanted the names of the people who were disabled, and they didn't get that? I'm not asking. I'm just trying to figure out what... It's all about whether we had actual notice that you were asking on behalf of disabled, or it was open, obvious, and apparent to us that they must be asking on behalf of disabled. That's what it all goes to, if that makes sense. They're saying, well, it's BASH, so you had to know. And we're saying, well, that's not the law. That amendment was... That was changed before the facts of this case. BASH can go to a veteran, period. That person doesn't have to be disabled. As a matter of fact, they admitted that if the first 60 people that came into their development, none of them were disabled. They would have taken all 60 of them. You didn't have to be disabled to live in their development. And that's what the testimony they gave at trial. I think I've addressed the main points in our brief. And I can go over with you, but the brief indicates in Dayton 1, this court uses the necessary argument. And the court issue refers to is necessary several times. Several times. It says right before you remanded the case, it says there are questions of fact about whether, and then the court refers to is necessary. And the court referred to is necessary many times. And Judge Rose plucked that out, put that in the jury instructions. His jury instructions were accurate. There's the one statement that he brought up about whether it's equal, if it's equal, well, then it's not necessary. But that was one sentence out of all those instructions. And the rest of that paragraph about that was explaining the Sixth Circuit's opinion. He used language from the Sixth Circuit, the rest of that paragraph. It wasn't prejudicial. It really wasn't a factor at trial. The jury had no issues with his case. Jury was satisfied with the evidence. No questions whatsoever. The bottom line is this case has been tried, and this court, we ask, should uphold the jury verdict. If you have any questions, I can take those.  Well, one quick question. I understand your argument about the was necessary, and our precedent is fairly clear in terms of using that language. Do you think that if I recall correctly, the statute itself uses the term may be necessary. How do you reconcile that, and do you think it makes any difference? Well, I think the FHA uses may, may. And then the ADA uses is. And to be honest with you, the courts, when they issue a decision, kind of use both. And when the courts apply these things, they kind of just push them together because the elements are almost identical except for that small distinction. But I don't think the plaintiffs were prejudiced at all because they had plenty of opportunity to present all this to the jury about whether it was necessary at all or even may be necessary. And Jennifer Heapy addressed the reasons why it wasn't necessary. There were other options that could have been provided for in this particular case. Do you think the Philadelphia Owners Association decision from the Third Circuit is helpful on this point? Your Honor, to be honest, I'm not familiar with that decision. Judge McKee, anything from you? No further questions. Thank you. Okay. Thank you. We'll hear in the rebuttal.  I'd like to correct an apparent error by defense counsel. He indicated that they timely provided Mr. Green as a witness pursuant to a revised schedule. There are a couple documents that dispel that. There was an initial disclosure that just said Jennifer Heapy. Then there was another one on January 2, 2018 that said Ms. Heapy and a HUD employee named Gordon Black. Mr. Green, Christopher Green, was not mentioned on that. That was when Judge Rice was overseeing the case? Yes. He said those were Rule 26 disclosures or discovery responses? Those were disclosures, I think, pursuant to Rule 26. If you look at our motion in limine on Doctrine Entry 86, we indicate that he was never disclosed. I've been trying cases for 45 years. I know never to call my opposing counsel unless he or she withdraws and is listed as a witness. I had no idea they were going to call him. I'm still confused because obviously you found out at some point because you filed a motion in limine. I filed a motion in limine I think a day or two after they finally disclosed him around January 12. I think it was, and don't hold me to the exact date, 2020, which is on the eve of the first scheduled trial before Judge Rice. What was the time lapse between the time that he withdrew as an employee of that company and then he was disclosed as a witness? I think less than 10 days. I understand why you're unhappy about this, but you're saying everybody knows that he wouldn't be called as a witness while he's attorney for the company. For whatever reason, he's no longer attorney for the company and they disclose him within 10 days. According to your fellow counsel, they say that they would tender him for a deposition. Just give me a big picture thing. What's wrong with that? Where, at no time, did they ever tender him for a deposition. No time. So you're saying that your fellow counsel said they offered to provide him and you say that didn't happen. That never happened. Okay, alright, thank you. Whether they volunteered him for a deposition or not, you could have sought permission from the court to, under the circumstances of this case, take his deposition, right? Rule 37 requires automatic exclusion unless there is a good faith explanation for the failure to disclose. And this is sandbagging of the world. Explain to me again why the change in his position, which now permitted him to testify. Why is that not a good faith explanation? Because it should have been done at least two years before. You said no attorney would ever disclose or think they were going to be a witness if they were the attorney for the company. So why would they have disclosed it two years earlier? Were they psychic? Two years later he was going to resign from the company? If they intended to call him as a witness, they should have disclosed him either on January 2nd. If they didn't intend to call him because he was the attorney for the company, then why, when that situation changed, would that not have triggered them to disclose, which you say they fulfilled within 10 days? It was untimely. On the eve of trial. This is the whole purpose of Rule 26 and the corollary sanctions provision in Rule 37. It was on the eve of a trial that didn't occur for two and a half more years. That is correct. However, it is still automatic as I read Sixth Circuit precedent. Unless there is a good faith explanation. And we respectfully submit that there was no honest mistake or an explanation that would justify the non-disclosure. They certainly added in the January 2018 subsequent disclosure at least one other witness. But they didn't add Chris Green who attended depositions in February of 2018. Chris Green who actively, who handled a number of other matters in this case. And you're saying that what I would describe as just generally background information Green provided about the thought process or the actions that Keefey went through. That's why you lost this case. I think it's an important factor. Whenever a lawyer gets up and testifies as a witness. There is a danger that the real expert on the law, the judge. His role gets supplanted by another lawyer getting up and explaining what he could and couldn't do as a matter of law. We've used a lot of your time.  Thank you very much. We'd ask that you reverse. Thank you very much. Thanks to both counsel. The case will be submitted.